IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| THOMAS RANDALL AINSWORTH,<br><br>Petitioner,<br><br>v.<br><br>WARDEN BENZON,<br><br>Respondent. | MEMORANDUM DECISION<br>& ORDER DENYING<br>HABEAS-CORPUS PETITION<br><br>Case No. 2:17-CV-1205-RJS<br><br>Chief District Judge Robert J. Shelby |

In this federal habeas-corpus case, inmate Thomas Randall Ainsworth attacks his state conviction. 28 U.S.C.S. § 2254 (2020). Having carefully considered all relevant documents and law, the Court concludes that Petitioner has not surmounted the federal habeas standard of review. The petition is therefore denied.

## BACKGROUND

> On Christmas Eve 2011, [Petitioner] drove his car over a median and crashed head-on into another vehicle. An 18-month-old boy was killed and both of his parents were seriously injured in the accident.
> Ainsworth had methamphetamine in his system at the time of the accident. He was charged with three counts of causing substantial bodily injury or death while negligently driving a car with a measurable amount of a Schedule II controlled substance in his body. The charged offenses were second degree felonies under Utah Code section 58-37-8(2).

*State v. Ainsworth*, 2017 UT 60, ¶¶ 5-6.

Utah Code fixes two sets of violations for motorists who, having ingested alcohol or drugs, cause death or serious bodily injury to another. Under DUI sections, it is a third-degree felony to kill or seriously injure someone when under the influence of alcohol or any drug "to a degree that renders the person incapable of safely operating a vehicle." Utah Code Ann. § 41-6a-

502(1)(b) (2021); *id*. § 41-6a-503(2) (designating as third-degree felony infliction of serious bodily injury when operating vehicle in negligent manner and violating § 502); *id*. § 76-5-207(2) (designating as third-degree felony causation of death of another by operating motor vehicle in negligent manner and under influence of alcohol or any drug rendering person incapable of safely operating vehicle). Meanwhile, the "measurable substance" sections establish an analogous offense--i.e., it is a second-degree felony to cause death or serious bodily injury with any "measurable" amount of a Schedule I or Schedule II drug in the driver's body. *Id*. § 41-6a-517 (defining elements of measurable-substance offense); *id*. § 58-37-8(2)(h) (designating as second-degree felony operation of vehicle in negligent manner while knowingly and intentionally having measurable amount of Schedule I or Schedule II substance in person's body and killing or seriously injuring another).

In the Utah Supreme Court, Petitioner unsuccessfully challenged these sections' constitutionality. *Ainsworth*, 2017 UT 60. He had been convicted of three second-degree felonies under measurable-substance sections, but argued constitutional grounds existed for reducing each charge to a third-degree felony under DUI sections. *Id*. ¶ 2. The supreme court upheld the constitutionality of the legislature's classification of Petitioner's offenses as second-degree felonies under the measurable-substance statute. *Id*. ¶ 4.

### PETITIONER'S ASSERTED GROUND FOR FEDERAL-HABEAS RELIEF

Petitioner urges that the second-degree-felony designation in the measurable-amount statute--as it differs from the third-degree-felony designation in the DUI statute--violates his substantive due-process rights because it is not rationally related to a legitimate state interest. (ECF No. 12, at 5.) This is a purely legal issue.

2

## MERITS ANALYSIS

### A. Standard of Review

The standard of review to be applied in federal habeas cases is found in § 2254, under which this habeas petition is filed, stating in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C.S. § 2254(d) (2021).

This "highly deferential standard," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quotation marks and citation omitted); *see Littlejohn v. Trammell*, 704 F.3d 817, 824 (10th Cir. 2013), is "'difficult to meet,' because [the statute's] purpose is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-103 (2011) (citation omitted)). This Court is not to determine whether the supreme court's decisions were correct or whether this Court may have reached a different outcome. *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). And, "[t]he petitioner carries the burden of proof." *Cullen*, 563 U.S. at 181.

Under *Carey v. Musladin*, 549 U.S. 70 (2006), the first step is determining whether clearly established federal law exists relevant to Petitioner's claims. *House v. Hatch*, 527 F.3d 1010, 1017-18 (10th Cir. 2008); *see also Littlejohn*, 704 F.3d at 825. Only after answering yes to

3

that "threshold question" may the Court go on to "ask whether the state court decision is either contrary to or an unreasonable application of such law." *Id.* at 1018.

> [C]learly established [federal] law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*Id.* at 1016.

Further, "in ascertaining the contours of clearly established law, we must look to the '*holdings* as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Littlejohn*, 704 F.3d at 825 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (emphasis added) (citations omitted)); *see also Fairchild v. Trammel*, 784 F.3d 702, 710 (10th Cir. 2015) (stating "Supreme Court holdings 'must be construed narrowly and consist only of something akin to on-point holdings'" (quoting *House*, 527 F.3d at 1015)). And, in deciding whether relevant clearly established federal law exists, this Court is not restricted by the state court's analysis. *See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("[F]ederal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) ("[A] state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (citation omitted).

If that threshold is overcome, this Court may grant habeas relief only when the state court has "unreasonably applied the governing legal principle to the facts of the petitioner's case." *Walker v. Gibson*, 228 F.3d 1217, 1225 (10th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). This deferential standard does not let a federal habeas court issue a writ merely because it determines on its own that the state-court decision erroneously applied

4

clearly established federal law. *See id.* "'Rather that application must also be unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 411). Indeed, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington*, 562 U.S. at 100 (emphasis in original) (quoting *Williams*, 529 U.S. at 410).

This highly demanding standard means to pose a sizable obstacle to habeas petitioners. *Id.* at 786. Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id*. It maintains power to issue the writ when no possibility exists that "fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents. It goes no farther." *Id.* To prevail in federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87. It is against this backdrop that the Court now applies the standard of review here.

### B. Due Process Argument

Though Petitioner bears the burden of showing the Utah Supreme Court's analysis does not pass the federal standard of review, the way Petitioner framed his argument completely ignores the standard of review. Petitioner's ground for relief would accurately reflect the standard of review if it were restyled as follows: Was the Utah Supreme Court's decision (that the second-degree-felony designation in the measurable-amount statute--as it differs from the third-degree-felony designation in the DUI statute--did not violate his substantive due-process rights because it was rationally related to a legitimate state interest) "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"?

5

Because Petitioner did not acknowledge the standard of review, he did not even begin to meet his burden to show that the Utah Supreme Court applied the wrong United States Supreme Court precedent and/or unreasonably applied that precedent. He similarly missed the chance before the Utah Supreme Court to flesh out his federal due-process argument. As the supreme court put it:

> Ainsworth also vaguely asserts a due process basis for his challenge. But he does not identify a distinct basis in the Due Process Clause for his constitutional challenge. His briefing just recasts his uniform operation arguments in due process terms-- asserting that the measurable substance classification falls short under the Due Process Clause because there is no rational basis for punishing the (purportedly lesser) measurable substance offense more harshly than the DUI offense. For that reason we do not treat the due process claim separately in this opinion. We treat it as Ainsworth does--as a mere restatement of the uniform operation challenge--and reject it for reasons set forth below.

*Ainsworth*, at ¶ 15 n.3. The Court thus reviews the supreme court's rational-basis analysis of the Utah Code's measurable-substance provisions under the Uniform Operation of Laws Clause, Utah Const. art. I, § 24 ("All laws of a general nature shall have uniform operation."), as including a rational-basis analysis under the Federal Due Process Clause, U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . .").

The narrow question before the Utah Supreme Court was whether there was a "rational basis for punishing individuals who have any *measurable amount* of controlled substance in their bodies more harshly than individuals who have an *incapacitating amount* of the substance in their bodies." *Ainsworth*, at ¶ 18 (quotation marks and citation omitted).

Remembering that review is tightly restricted by the federal habeas standard of review, this Court observes that Petitioner concedes that the Utah Supreme Court selected the correct

6

governing legal principle with which to analyze this alleged due-process issue: the rational-basis standard. (ECF No. 12, at 5 (arguing due-process rights violated because measurable-amount statute "is not rationally related to a legitimate state interest")); *see United States v. Comstock*, 560 U.S. 126, 151 (2010) ("The phrase 'rational basis' most often is employed to describe the standard for determining whether legislation that does not proscribe fundamental liberties nonetheless violates the Due Process Clause. Referring to this due process inquiry, and in what must be one of the most deferential formulations of the standard for reviewing legislation in all the Court's precedents, the Court has said: 'But the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.' *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 487-488 (1955).").

The Utah Supreme Court set forth its rational-basis analysis regarding Petitioner's issue as follows:

> [W]e see a rational basis for this classification. It is true that the measurable substance provisions do not require proof of an "incapacitating amount" of a drug; "any measurable amount" is sufficient. *Id*. ¶ 9. But the measurable substance provisions require an element not required under the DUI laws: A second degree felony is established under the measurable substance provisions only upon a showing that the drug in question is a Schedule I or II substance. *See* Utah Code § 58-37-8(2)(h). The DUI provisions are different. They are triggered by the use of alcohol or any drug. *See id*. § 41-6a-502(1)(b); *id*. § 76-5-207(2). And the legislature obviously deemed that difference significant. It was so concerned about the use of Schedule I or II drugs by drivers that it deemed that element enough to bump the offense level to a second degree felony (even in cases in which there is no showing of actual impairment).
> 
> We see nothing irrational in that decision. Schedule I and II drugs are those viewed as having a greater potential for abuse and a greater risk of dependence than other controlled substances. *See* Utah Code § 58-38a-204(1)-(5); 21 C.F.R. §§ 1308.11-1308.15. That concern can certainly sustain a rational decision by the

7

> legislature to punish the use of these substances more harshly than the use of other substances. *See State v. Outzen*, 2017 UT 30, ¶ 23, 408 P.3d 334 (upholding Utah Code section 41-6a-517 against similar constitutional attack; concluding that classification treating those with a valid prescription differently may be understood to "promote[] public safety by discouraging individuals who have ingested controlled substances from operating motor vehicles and creating potentially dangerous driving conditions"). And that is sufficient to sustain the constitutionality of this statutory scheme.

*Ainsworth*, at ¶¶ 19-20.

At this point, Petitioner has not met his burden of finding on-point United States Supreme Court precedent and arguing that the Utah Supreme Court unreasonably applied it. The Court therefore denies habeas-corpus relief.

The Court notes that the Supreme Court has described rational-basis review as "highly permissive," *Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017); and, "one of the most deferential formulations of the standard for reviewing legislation in all the Court's precedents," *Comstock*, 560 U.S. at 151. This emphasizes the significant challenge Petitioner would have had if he had actually tried to show the Utah Supreme Court unreasonably applied on-point United States Supreme Court precedent. And, it bears noting the Court itself searched for on-point United States Supreme Court precedent to assess whether Utah Supreme Court unreasonably applied the rational-basis analysis. The Court found nothing on-point.

## CONCLUSION

Petitioner's claim does not hurdle the federal habeas standard of review.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus is **DENIED** and the action **DISMISSED WITH PREJUDICE**.

**IT IS ALSO ORDERED** that a certificate of appealability is **DENIED**.

This action is **CLOSED**.

DATED this 10th of March, 2021.

BY THE COURT

_____
CHIEF JUDGE ROBERT J. SHELBY
United States District Court